**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samantha Glass, | No. CV-19-04883-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Christopher Robinson, et al., | |
| Defendants. | |

Pending before the Court is Defendant Christopher Robinson's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 14, "Mot."; Doc. 17, "Resp."; Doc. 21, "Reply"). He argues that Plaintiff Samantha Glass's unlawful arrest and excessive force claims under 42 U.S.C. § 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Having considered the pleadings, amended complaint, and applicable law, the Court enters this Order.

**I.     JUDICIAL NOTICE**

As an initial matter, each party submitted exhibits, without objection, for the Court to consider in resolving this motion.[1] Officer Robinson submitted documents denoting Ms. Glass's guilty pleas to extreme driving under the influence ("DUI") in violation of A.R.S. § 28-1382 and interfering with a police officer in violation of Gilbert Municipal Code § 42-179[2] and her unsupervised probation sentence. (Doc. 14-2 at 5, 7.) Ms. Glass submitted

---
[1] Neither party disputes the authenticity of any of these exhibits.
[2] Section 42-179 has been amended since Ms. Glass's conviction. At the time she pled

Officer Robinson's body-camera video with audio from the incident underlying her allegations. (Doc. 23, "BCV"). Although the Court must ordinarily rely on the pleadings in resolving a motion to dismiss under Rule 12(b)(6), it may nevertheless "consider certain [other] materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (holding that "[c]ourts may take judicial notice of some public records, including the 'records and reports of administrative bodies'" (citation omitted)); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); Fed. R. Evid. 201; Fed. R. Civ. P. 12(d). Thus, the Court will consider these undisputed public records that underpin the basis of Ms. Glass's allegations and directly implicate the viability of her claims under *Heck*.[3]

## II. BACKGROUND

On March 9, 2018, Town of Gilbert police officers were called to an apartment complex to investigate an attempted car burglary. (Doc. 13, "FAC" ¶¶ 8-14.) Their investigation led them to Ms. Glass, who was sitting on the ground outside her ex-husband's apartment.[4] (*Id.* ¶¶ 9, 15.) Officer Robinson was first to confront her there. (*Id.*

---

guilty, it read: "It is unlawful for any person to hinder, resist, delay, obstruct or prevent any police officer in the discharge of his attempt to discharge his official duties. It is further unlawful for any person to fail or refuse to obey or otherwise comply with any lawful order issued by a police officer, including a request to provide a full, true name, when such officer has a reasonable suspicion that criminal activity is occurring, has occurred or is about to occur." G.M.C. § 42-179.

[3] In addition, other courts in this Circuit have similarly considered an officer's body-camera video in analyzing a motion to dismiss. *See*, *e.g.*, *Lihosit v. Flam*, No. CV-15-01224-PHX-NVW, 2016 WL 2865870, at *2-3 (D. Ariz. May 17, 2016); *see also Covert v. City of San Diego*, No. 15-CV-2097 AJB (WVG), 2017 WL 1094020, at *5 (S.D. Cal. Mar. 23, 2017) (considering officers' body-camera videos and associated transcripts since they were "incorporated into the FAC by reference and [were] documents that partially form[ed] the basis of Plaintiff's complaint").

[4] Before sitting outside the apartment, Ms. Glass argued with her ex-husband about their daughter in a nearby parking lot. (*Id.* ¶¶ 6-9.) After her ex-husband walked away from their conversation with their daughter, she "attempted to enter her ex-husband's vehicle in order to wait for him, but was unable to enter." (*Id.* ¶ 8.) Another apartment complex resident saw her trying to enter the car and, believing she was attempting to burglarize it, called the police. (*Id.* ¶ 10.) Sometime later, after unsuccessfully entering the car, Ms. Glass then went to sit outside her ex-husband's apartment and wait for him. (*Id.* ¶¶ 8-9.)

¶ 15.) While he spoke with her for several minutes, during which time "[i]t was obvious from [her] demeanor and manner of speech that she was extremely impaired by alcohol consumption," (*id.* ¶ 21), she was non-responsive and evasive to his questioning about the attempted car burglary. (*Id.* ¶ 13-16; BCV 00:02-04:05.)

Then, before Officer Robinson was finished questioning Ms. Glass but after he told her that he was "going to put [her] in handcuffs," she "attempted to walk past [him]." (FAC ¶ 20; Doc. 23, "BCV" 00:02-04:05.) In response to Officer Robinson's declaration that he was going to put her in cuffs, she responded "no" and continued walking away. (BCV 04:05-04:07.) Officer Robinson then tried grabbing her wrist, but she resisted his efforts and kept trying to walk away. (*Id.* 04:05-04:08.) Once Officer Robinson ultimately grabbed ahold of one of her wrists, he told her that she was "not free to leave" and asked her to "put [her] hands behind [her] back," to which she responded "no" and continued resisting. (*Id.* 04:09-04:14; *see also* FAC ¶¶ 22-23.) Officer Robinson then brought Ms. Glass to the ground, causing her face to hit the concrete, and attempted to grab both of her wrists while informing her that "[she] [was] being detained." (BCV 04:13-04:19.) While she continued resisting Officer Robinson's efforts to put handcuffs on her, two other officers arrived on scene to help him detain her. (*Id.* 04:19-04:38.) Once in handcuffs, she was reminded by Officer Robinson that he had told her "[she] was not free to leave" and that she is now "under arrest for failure to obey a police officer." (*Id.* 04:19-05:00.) Even after the officers told her that the fire department would tend to her injuries from being detained, she continued to resist their instructions as they attempted to escort her away from her ex-husband's apartment. (*Id.* 06:38-06:58.)

As a result of this encounter, Ms. Glass pled guilty to extreme DUI and interfering with a police officer.[5] (Doc. 14-2 at 5.) After pleading guilty and being sentenced, Ms. Glass brought the two claims at issue in this case under 42 U.S.C. § 1983, but only one, the one alleging excessive force against Officer Robinson while he detained her, remains.[6]

---

[5] The Court notes that the document denoting Ms. Glass's conviction indicates that she pled guilty to "Failure to Obey a Police Officer" under G.M.C. § 42-179, which is titled "Interfering with a police officer."

[6] The other claim alleges that Officer Robinson arrested her without probable cause. (FAC

(FAC ¶¶ 27-31.) Officer Robinson argues Ms. Glass's convictions make this claim incognizable under *Heck*. (Mot. at 1.)

### III. LEGAL STANDARD

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). A complaint setting forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists if the complaint sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### IV. DISCUSSION

Officer Robinson argues that Ms. Glass's excessive force claim is incognizable under *Heck* because she was convicted of interfering with a police officer under G.M.C. § 42-179. *Heck* requires that a court dismiss a § 1983 claim if "(1) it seeks to recover damages for 'harm caused by actions whose unlawfulness would render a conviction or sentence invalid' and (2) the plaintiff cannot show that 'the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1054 (9th Cir. 2016) (quoting *Heck*, 512 U.S. at 486-87). The Ninth Circuit recently, and succinctly, summarized this doctrine's narrow scope:

¶¶ 25, 29.) Ms. Glass abandons this claim in her response. (*See* Resp. at 1 ("Plaintiff further requests that the Court grant her leave to file a second amended complaint, so that she may formally withdraw her wrongful arrest claim in paragraphs 25 and 29.")). Instead of granting her leave to amend her complaint, the Court will strike these allegations.

- 4 -

> *Heck* held that § 1983 damages claims are not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." But, if a plaintiff's claim, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."

*Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 643 (9th Cir. 2018) (quoting *Heck*, 512 U.S. at 487).

Neither party disputes that Ms. Glass was convicted of interfering with a police officer under G.M.C. § 42-179.[7] Moreover, nothing suggests that her conviction has since been invalidated. Thus, the question is whether Ms. Glass's success on her excessive force claim would necessarily imply that her interference with a police officer conviction was invalid. *Heck*, 512 U.S. at 487. The Court holds it would not.

Officer Robinson unpersuasively argues that Ms. Glass's success on her excessive force claim would necessarily imply that her interfering with a police officer conviction is invalid. (Mot. at 6-9; Reply at 3-12.) Ms. Glass proposes five reasons for why *Heck* is inapplicable.[8] (Resp. at 1-2.) Of those reasons, the Court agrees that Officer Robinson has not shown how her success on the excessive force claim would *necessarily* imply her conviction is invalid. (Resp. at 5-9.) Because no such thing has been shown, and as explained below, the Court holds that the excessive force claim cannot be dismissed under *Heck*.

**A.** ***The Manner Of Conviction Is Irrelevant.***

As an initial matter, it is entirely inconclusive whether Ms. Glass was convicted of

---

[7] Although Ms. Glass pled guilty to two offenses, the Court finds her extreme DUI conviction irrelevant to the *Heck* analysis.
[8] More specifically, she argues that: (1) the facts here differ from those in *Heck*; (2) Officer Robinson has not shown that success on her excessive force claim would be incompatible with her conviction; (3) success on her excessive force claim would not in fact be inconsistent with her conviction; (4) *Heck* is inapplicable because she pled guilty, not because a jury rendered a guilty verdict; and (5) Congress's intent in passing Section 1983 and public policy support *Heck*'s inapplicability. (Resp. at 1-2.)

interfering with a police officer by jury verdict or plea. *See Chavez v. City of California*, No. 1:19-cv-00646-DAD-JLT, 2020 WL 1234503, at *7 (E.D. Cal. Mar. 13, 2020) (finding *Heck* equally applicable to convictions obtained by jury verdicts and pleas). Instead, courts must compare the precise factual basis underlying plaintiff's conviction, regardless of whether it is by plea, with that of the § 1983 claim. *Id.* ("[W]hether a § 1983 or other civil claim is *Heck*-barred where the underlying criminal conviction was obtained by way of plea (whether no contest or guilty) turns on the nature of the allegations in the civil action, the factual basis of the criminal conviction, and whether success on the former would undermine the validity of the latter.").

Thus, what matters is not how Ms. Glass was convicted, but whether the factual basis of her conviction would be negated by a success in her § 1983 suit. *See Taylor v. County of Pima*, No. CV-15-00153-TUC-RM, 2017 WL 6550590, at *8 (D. Ariz. Mar. 16, 2017) (interpreting Ninth Circuit jurisprudence to mean that "a § 1983 action is *Heck* barred when successfully proving the plaintiff's § 1983 claims would fatally undermine the factual basis of an outstanding plea-based conviction"); *Gordon v. Perris Police Station*, No. EDCV 18-315-RGK (AGR), 2019 WL 3021465, at *5 (June 14, 2019) ("A *Heck* bar may be based on a conviction resulting a guilty or no contest plea," but this "depend[s] on the nature of the § 1983 claims and the factual basis for the plea."), *report and recommendation adopted by*, 2019 WL 3017764 (C.D. Cal. July 10, 2019); *Best v. Beresford*, Case No.: 3:18-cv-00554-RCJ-WGC, 2019 WL 1461921, at *10 (Feb. 27, 2019) ("[W]hether a section 1983 claim will be *Heck*-barred when the underlying conviction was obtained pursuant to a no contest (or guilty) plea depends on the allegations in the section 1983 action and the evidentiary basis of the conviction."), *report and recommendation adopted by*, 2019 WL 1472360 (D. Nev. Apr. 2, 2019). After all, the impetus for the *Heck* doctrine was based on the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments . . . that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Heck*, 512 U.S. at 486. It was not based on whether the plaintiff was

convicted because she pled guilty as opposed to being found guilty by a jury.

Of course, with this in mind, it should come as no surprise that the Court would need to know the underlying factual basis for Ms. Glass's interference with a police officer conviction, which neither party provides, to determine whether a successful excessive force claim would necessarily imply that her conviction is improper. For instance, if she was convicted notwithstanding whether Officer Robinson used excessive force, then her claim could proceed. *See*, *e.g.*, *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (noting that "the mere failure of [plaintiff] to obey a police officer would not have made the force [that defendant officer] used reasonable"). But if she was convicted upon a finding that Officer Robinson used reasonable force, then her excessive force claim would be barred. *See Preston v. Alexander*, No. CV-11-1200-PHX-GMS (ECV), 2013 WL 1561062, at *3 (D. Ariz. Apr. 12, 2013) ("A defendant can only be convicted of *resisting arrest* in Arizona if the officer's conduct was 'lawful' when effecting the arrest; an officer's conduct was not 'lawful' if he used excessive force." (emphasis added)).[9] However, the precise basis for her conviction is unknown. As a result, there are several facts that could have underpinned her conviction that *might* bar a subsequent excessive force claim against Officer Robinson. Yet, whether *Heck* applies is better addressed by considering the actual factual basis underlying Ms. Glass's conviction, not speculating about what it could be.

At the time she was convicted of interfering with a police officer, the ordinance provided that:

> It is unlawful for any person to hinder, resist, delay, obstruct or prevent any police officer in the discharge of his attempt to discharge his official duties. It is further unlawful for any person to fail or refuse to obey or otherwise comply with any lawful order issued by a police officer, including a request to provide a full, true name, when such officer has a reasonable suspicion that criminal activity is occurring, has occurred or is

---

[9] Under A.R.S. § 13–409, a law enforcement officer is justified in using physical force in making an arrest if (1) a reasonable person would believe that such force was immediately necessary to effect the arrest, (2) the officer made known to the arrestee the purpose of the arrest or believed the arrestee knew the reason they were being arrested, and (3) a reasonable person would believe the arrest was lawful.

- 7 -

about to occur.

G.M.C. § 42-179. There are multiple ways a person may violate this section of the code. Some violations would preclude an excessive force claim while others may not so, as discussed below, the specific factual basis for the guilty plea is a determinative.

### B. *Heck* Does Not Clearly Bar Ms. Glass's Excessive Force Claim.

In claiming a contrary holding, Officer Robinson argues that *Heck* prohibits Ms. Glass's excessive force claim because "[he] had probable cause to arrest [her] for extreme DUI when he initiated the arrest" and therefore, "was entitled to use *some degree* of physical force to effect the arrest." (Mot. at 8 (emphasis added); *see also* Reply at 8 ("Officer Robinson was entitled to use some degree of physical force to overcome [Ms. Glass's] resistance.")). This argument is unappealing. The Court agrees that the Fourth Amendment's "reasonableness" standard affords officers the ability to use some degree of physical force in making arrests. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (explaining that "whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" (internal quotation marks and citations omitted)). Indeed, it would certainly be the rare case where an individual detained herself without any physical endorsement. But just because the Fourth Amendment permits using force in making an arrest does not somehow mean Ms. Glass's success on her *excessive* force claim would necessarily imply that her conviction for interfering with an officer is invalid.[10] As discussed above, there could be any number of facts underlying Ms. Glass's conviction which would not even be impacted if she were to succeed on her excessive force claim. *See*, *e.g.*, *Heck*, 512 U.S. at 487 n.7 (reasoning that a successful § 1983 claim based on an

---

[10] Officer Robinson even appears to acknowledge this in a footnote. (*See* Reply at 9-10 n.7.) He cites *Rodriguez v. City of Modesto*, 535 Fed. Appx 643, 645 (9th Cir. 2013) (Mem.), in which the Ninth Circuit reasoned that plaintiffs could, consistent with *Heck*, pursue "a claim that, though having a right to use reasonable force based on [p]laintiffs' § 148(a)(1) violations, the arresting officers responded with excessive force")).

- 8 -

unreasonable search would not necessarily imply that plaintiff's conviction was invalid).

Officer Robinson also unpersuasively argues that *Heck* bars Ms. Glass's excessive force claim because he "only used force during the course of the arrest." (Reply at 5 (quoting *Smith v. City of Hemet*, 394 F.3d 689, 697 (9th Cir. 2005) (en banc); *see also* Reply at 7-12.). This conclusion is unsupported here. In *Smith*, the Ninth Circuit held that *Heck* did not preclude Smith's excessive force claim solely because he pled guilty to resisting arrest under California Penal Code § 148(a)(1). *Smith*, 394 F.3d at 699. At the time Smith was convicted for resisting arrest under California law, an arresting officer must have been acting lawfully at the time of an arrest for a resisting arrest conviction to be valid. *See id.* ("In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer."). According to the Ninth Circuit, this meant that the arresting officer must have been "engaged in the performance of his or her duties" and "[e]xcessive force used by a police officer at *the time of the arrest* is not within the performance of [those duties]." *Id.* (emphasis in original). Because an individual could not, under California law, be convicted under § 148(a)(1) if the officer used excessive force *at the time of the arrest*, "[defendants] urge[d] that if Smith's allegations that he was subjected to excessive force *during the arrest* are now found to be true, that finding will necessarily imply the invalidity of his criminal conviction under § 148(a)(1)." *Smith*, 394 F.3d at 696 (emphasis added). In responding to this argument, the Ninth Circuit identified different "phases" of Smith's encounter with the officer, including the investigative, arrest, and post arrest phases. *Id*. at 698.[11] After doing so, it found that Smith engaged in several acts violating § 148(a)(1) during the investigative and arrest phases. *Smith*, 394 F.3d at 697. However, because the Ninth Circuit was unable

---

[11] The Ninth Circuit again addressed the impact of a § 148(a)(1) conviction on subsequent excessive force claims in *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011). In *Hooper*, after stating that "[t]o the extent the state law under which a conviction is obtained differs, the answer to the *Heck* question could also differ," the Ninth Circuit "conclude[d] that a conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" *Id.* at 1133-34. Again, a conviction under § 148(a)(1) is *only* valid if the arresting officer did not use excessive force. *See Smith*, 394 F.3d at 697. Nothing in the ordinance here implies something similar.

to "determine that the actions that underlay Smith's conviction upon his plea of guilty occurred at the time of or during the course of his unlawful arrest," it found *Heck* inapplicable. *Id.* at 699.

Here, Officer Robinson's request to ignore the underlying factual basis of Ms. Glass's conviction and simply find *Heck* applicable because he used force during his arrest of her is unpersuasive. He specifically argues that "[i]t is clear in this case that [Ms. Glass] pled guilty for attempting to prevent Officer Robinson from arresting her" and "[her] conviction for violat[ing] § 42-179 can only be based on her physical resistance." (Reply at 8; *see also id.* at 10 ("[Ms. Glass's] acts of resistance occurred as Officer Robinson was attempting to restrain her.")). Ms. Glass disputes these characterizations of her conviction. She argues that she was convicted for failing to obey Officer Robinson by refusing to allow him to put handcuffs on her, saying "no," and walking away, not for physically resisting arrest.[12] In essence, she argues that her interfering with a police officer conviction is unconnected to Officer Robinson's use of force in arresting her. The Court agrees that just because Officer Robinson used force in arresting her does not mean she was convicted of G.M.C. § 42-179 because his use of force was reasonable. Thus, because the Court is unable to determine the actions underlying Ms. Glass's conviction, it must, as the Ninth Circuit concluded in *Smith*, similarly conclude that Ms. Glass's "success in the present action would not necessarily impugn [her] conviction." *Cf. Smith*, 394 F.3d at 699.

## V.     CONCLUSION

In sum, the Court lacks adequate information to conclusively find that Ms. Glass's success on her excessive force claim against Officer Robinson will fatally undermine her conviction of interfering with a police officer. Because nothing in the record indicates Ms. Glass's success on her excessive force claim would necessarily imply her conviction is invalid, dismissal is unwarranted under *Heck*.

---

[12] Indeed, Officer Robinson even told Ms. Glass that she was "under arrest for failure to obey a police officer." (BCV 04:19-05:00.)

Accordingly,

**IT IS ORDERED DENYING** Defendant's Motion to Dismiss, (Doc. 14).

**IT IS FURTHER ORDERED** paragraphs 25 and 29 of the FAC upon Ms. Glass's request are **STRICKEN**.

Dated this 8th day of June, 2020.

Honorable Susan M. Brnovich
United States District Judge