**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samantha Glass,<br><br>         Plaintiff,<br><br>v.<br><br>Christopher Robinson, et al.,<br><br>         Defendants. | No. CV-19-04883-PHX-ROS<br><br>**ORDER** |

Plaintiff Samantha Glass brought this suit against Gilbert police officer Defendant Christopher Robinson under 42 U.S.C. § 1983, alleging Robinson used excessive force during an encounter with Glass in March 2018.[1]  (Doc. 13).  Robinson arrived at the apartment complex where Glass's ex-boyfriend and her daughter resided to investigate a possible vehicle burglary.  (Doc. 60 at 1).  Robinson found Glass sitting on a second-floor landing waiting for her ex-boyfriend to return.  (Doc. 60 at 2).  Glass was intoxicated.  (Doc. 60 at 3).  During the encounter, Robinson decided he had grounds to detain Glass.  (Doc. 60 at 3).  Glass resisted when Robinson attempted to handcuff her.  (Doc. 60 at 4). At one point during the encounter, Robinson used a "leg sweep" while holding Glass's arm, which caused Glass to fall to the ground face-first.  (Doc. 60 at 5).  Glass suffered a wound to her face as a result.  (Doc. 60-2).  Glass contends Robinson did not have probable cause to effect the arrest and used unreasonable force in arresting her, which she claims violated her rights under the Fourth Amendment.  (Doc. 64 at 7).

---

[1] All facts set forth in this Order are undisputed unless otherwise noted.

Before the Court is Robinson's Motion for Partial Summary Judgment. (Doc. 59). Robinson asks the Court to grant summary judgment on all aspects of the case except Glass's claim that the leg sweep constituted an unreasonable use of force in violation of the Fourth Amendment. (Doc. 59 at 13). Specifically, Robinson argues, "[t]he undisputed facts show that: (1) Officer Robinson had probable cause to arrest Plaintiff; (2) Plaintiff resisted arrest; and (3) Officer Robinson was entitled to use force to overcome Plaintiff's resistance." (Doc. 59 at 13).

Defendant's motion will be granted in part.

## BACKGROUND

Defendant Christopher Robinson is a Gilbert, Arizona police officer. (Doc. 59 at 1). On March 9, 2018, Robinson responded to the address of an apartment complex regarding a possible vehicle burglary. (Doc. 60 at 1). Robinson was informed by dispatch that a witness saw a Caucasian female wearing shorts and a hoodie jump the gate to the apartment complex and try to break into a red pickup truck. (Doc. 60 at 1). Robinson was also informed the woman appeared intoxicated, and was at one point sitting in a vehicle outside the gate of the complex. (Doc. 60 at 1). When Robinson arrived at the complex, he observed the vehicle the woman was reported to be sitting in had a flat tire. (Doc. 60 at 2). Objects scattered around the vehicle, such as a car jack, indicated someone may have tried to change the tire unsuccessfully. (Doc. 60 at 2).

Robinson encountered Plaintiff Samantha Glass, who matched the description of the identified female, sitting on a second-floor landing. (Doc. 60 at 2). The interaction between Robinson and Glass was recorded by a body-worn camera. (Doc. 60 at 2). The parties agree the body-cam video, which is included in the summary judgment filings, (Doc. 60-2), accurately depicts the interaction between Robinson and Glass. (Doc. 60 at 2; Doc. 65 at 2, 7). During the interaction, Glass explained she was waiting for her boyfriend to return to his apartment. (Doc. 60 at 2). Glass appeared intoxicated. (Doc. 60 at 3; Doc. 60-2).

During the interaction, Robinson put on gloves and told Glass he was going to put

her in handcuffs. (Doc. 60 at 3; Doc. 60-2). When Glass subsequently attempted to leave the area, Robinson grabbed her arm and attempted to force it behind her back. (Doc. 60 at 3; Doc. 60-2). Glass struggled against Robinson's grip. (Doc. 60-2). Robinson then told Glass she was not free to leave and Glass continued to resist. (Doc. 60-2). At one point, Glass's head went down and her arm raised up. (Doc. 60-2). The parties dispute whether this gesture was an attempt to strike Robinson with her elbow. (Doc. 60 at 4; Doc. 65 at 4).

Robinson then performed a "leg sweep," which caused Glass's face to strike the concrete floor. (Doc. 60-2). The face-first contact with the floor split Glass's lip, which caused her blood to spill on the ground and on her legs. (Doc. 60 at 5; Doc. 60-2). She began to cry. (Doc. 60-2).

Glass does not dispute Robinson had probable cause to arrest her after he had instructed her not to leave and she continued to struggle to get free. (Doc. 65 at 6). Rather, she argues there was no probable cause to justify Robinson grabbing her wrist. (Doc. 65 at 6).

Glass was transported to the hospital. (Doc. 60 at 5). Robinson performed a blood draw pursuant to a search warrant which showed a blood alcohol concentration ("BAC") of 0.199. (Doc. 60 at 5). Glass later pled guilty to failure to obey a police officer and to extreme DUI, which is satisfied by a BAC greater than or equal to 0.15. (Doc. 60 at 5).

## LEGAL STANDARD

Summary judgment may be granted on any claim or defense if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). Material facts are those which may affect the outcome of the case and a dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmoving

party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). And, on a motion for summary judgment, "the district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 574 U.S. 518, 559–560 (2006). The moving party has the initial burden of production for showing the absence of any material fact. *Celotex Corp.*, 477 U.S. at 331.

## ANALYSIS

Robinson seeks partial summary judgment, requesting the Court find as a matter of law "(1) he had probable cause to arrest Plaintiff; (2) Plaintiff resisted arrest; and (3) he was entitled to use force to overcome Plaintiff's resistance." (Doc. 59 at 1-2). In other words, Robinson seeks to limit the issue for trial to solely the question whether the leg sweep was objectively unreasonable. (Doc. 59 at 2). Robinson's briefing is inconsistent and alternates between presenting arguments under the legal standard applicable to investigatory stops, *i.e.*, *Terry* stops, and the legal standard applicable to arrests. (Doc. 60 at 8-11). Robinson's briefing also fails to distinguish between facts available to Robinson at the time of the interaction with Glass, which could support probable cause, and facts that only became clear after the fact, which cannot. (Doc. 60 at 9-10). *See Rosenbam v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). But, based on the undisputed facts and the governing law, Robinson had reasonable suspicion to detain Glass. Immediately thereafter, Glass concedes probable cause developed for her arrest based on her "disobeying an officer's lawful order." (Doc. 64 at 7). Although Robinson seeks attorney fees and costs incurred in bringing the motion for partial summary judgment, he has not identified any valid basis for such an award.[2] (Doc. 59 at 2).

---

[2] Robinson argues Glass's Fourteenth Amendment claim should be dismissed as "duplicative" of the claim under the Fourth Amendment." (Doc. 59 at 2). Glass does not address this argument in opposition. With no explanation how the Fourteenth Amendment claim in this case is not simply a repackaging of the Fourth Amendment claim, the Court will grant summary judgment regarding the Fourteenth Amendment claim. *See, e.g.*, *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").

### I. Justification for Arresting or Detaining Glass

The parties have not clearly distinguished between the legality of the initial interaction and the legality of the subsequent arrest. Regarding probable cause to arrest, "[i]t is well established that 'an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under [42 U.S.C.] § 1983.'" *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Rosenbaum*, 663 F.3d at 1076) (modification in original). "Probable cause exists 'when the facts and circumstances within [an officer's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime.'" *Id.* (quoting *Rosenbaum*, 663 F.3d at 1076) (modification in original). "The analysis involves both facts and law. The facts are those that were known to the officer *at the time of the arrest*. The law is the criminal statute to which those facts apply." *Rosenbaum*, 663 F.3d at 1076 (emphasis added).

Probable cause is not required for what is referred to as a "*Terry* stop." To conduct such a stop, a law enforcement officer must have "reasonable suspicion" of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 10 (1968). Like probable cause, reasonable suspicion is a mixed question of fact and law. *United States v. Diaz-Juarez*, 299 F.3d 1138, 1141 (9th Cir. 2002). "Because it is a 'less demanding' standard, 'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause.'" *Kansas v. Glover*, 140 S.Ct. 1183, 1188 (2020). "The standard 'depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* (quoting *Prado Navarette v. California*, 572 U.S. 393, 402 (2014)) (emphasis omitted).

Robinson argues he had reasonable suspicion to detain Glass for trespass and DUI at the moment he first grabbed her arm. (Doc. 60 at 3). Based on the totality of the circumstances, Robinson had reasonable suspicion Glass had committed trespass and/or DUI. The body-cam footage establishes Glass drove a car and that she was present in an apartment complex that she did not live in. (Doc. 60-2). Robinson knew based on the call reporting Glass to 911 and his own observations that Glass was intoxicated, hopped a fence

into the complex, where she did not live, and attempted to break into her boyfriend's truck. (Doc. 60 at 1-3). Collectively, these establish a reasonable suspicion that Glass was trespassing on the property of an apartment where she did not live and that she may have driven there drunk.[3] Although Glass argues Robinson should have asked her whether she was in "actual physical control" of a vehicle, which is an element of DUI (Doc. 64 at 2), the Court does not hold Robinson was required to ask questions to establish the elements of the offense prior to detaining Glass, given the other evidence of DUI he had at the time.

Glass argues Robinson did not have authority to grab her wrist because he did not have probable cause at the time he grabbed her wrist. (Doc. 65 at 4). But the Court need not decide that question because Robinson at least had reasonable suspicion Glass had committed trespass and DUI. That reasonable suspicion meant Robinson was permitted to use some force to prevent Glass from leaving the scene during the *Terry* stop. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."); *Leibel v. City of Buckeye*, No. CV-18-01743-PHX-DWL, 2021 WL 3773770, at *13 (D. Ariz. Aug. 25, 2021) ("[A]n officer conducting a *Terry* stop may use force to prevent the suspect from leaving before the stop has run its course.") (citations omitted). To the extent Glass is arguing Robinson used excessive force in grabbing her arm based solely on reasonable suspicion, Glass is incorrect.

Courts apply a three-factor test to determine whether a use of force is objectively unreasonable. *See Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010); *Graham*, 490 U.S. at 395-96 (same). "First, we must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Id.* (quoting *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003)). "Next, we must evaluate the government's interest by assessing (1) the severity of the

---

[3] On the other hand, the Court does not hold these facts establish probable cause because a reasonably prudent person would need to determine that Glass drove while drunk (rather than prior to becoming drunk) or that she was not an invitee at the apartment complex, in order to believe Glass had committed DUI or trespass. *Cf. Rosenbaum*, 663 F.3d at 1076. Undisputed evidence does not indicate that Robinson had established these facts in a manner sufficient for probable cause at the time he grabbed Glass's arm.

crime; (2) whether the suspect posed an immediate threat to the officers' or the public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." *Id.* (citations omitted). "Third, 'we balance the gravity of the intrusion on the individual against the government's need for that intrusion.'" *Id.* (quoting *Miller*, 340 F.3d at 964).

First, the type and amount of force Robinson used when he grabbed Glass's wrist was objectively minimal. The body-cam video demonstrates that Robinson grabbed Glass's arm as she attempted to walk past him and down the stairs. The video demonstrates Robinson using a relatively minimal amount of force to prevent her from leaving the scene. *Cf. Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (instructing lower courts to use uncontested video evidence, where it is available, in conducting summary judgment analysis). Indeed, other than using his body to barricade the entrance to the stairs, it seems there was no less-intrusive method to prevent Robinson from leaving. This factor weighs in Robinson's favor.

Second, the government's interest in preventing Glass from leaving should not be gainsaid. The crimes she was suspected of committing are not insignificant, but do not immediately demonstrate that she was a threat to the safety of an officer or the public. She was obviously inebriated and, as Robinson knew from seeing her broken-down car on the way into the complex, she presumably was not able to leave the site by driving drunk. However, the video makes clear that she was attempting to escape. The government has a substantial interest in preventing criminal suspects—especially ones who are obviously intoxicated and may have driven drunk—from leaving before the termination of an ordinary *Terry* stop investigation.

Third, the intrusion by Robinson did not outpace the government's need for the intrusion. The body-cam video establishes that Glass was drunk and attempting to escape the police officers. Robinson was entitled to use some force to prevent her from escaping before the end of the *Terry* stop. Moreover, Robinson warned Glass that he was going to grab her before he did so by telling her "I'm about to grab ahold of you and put you in handcuffs." (Doc. 60-2). It was reasonable for him to use handcuffs to limit Glass's

mobility, and grabbing her wrist was a necessary predicate to using handcuffs. Thus, applying the three-factor excessive force inquiry, the Court finds that Robinson grabbing Glass's arm to put her into handcuffs was not an unreasonable method to prevent a suspect from leaving during a *Terry* stop.

Glass admits that she violated a lawful order by attempting to leave after Robinson told her she was not free to leave. (Doc. 65 at 3) ("Plaintiff agrees that she violated a lawful order by attempting to leave."). At this point, Robinson had probable cause that Glass had violated GMC § 42-179 by resisting the lawful order of a police officer on the undisputed facts presented to the Court.[4] Robinson's decision to use a leg sweep in effecting the subsequent arrest presents a triable issue regarding excessive force. In fact, Robinson has not moved for summary judgment on this issue.

In sum, the Court rejects Robinson's position that, from the very beginning of the encounter, he had probable cause that Glass had committed trespass, burglary, or DUI.[5] But Robinson was entitled to conduct a *Terry* stop and Glass concedes probable cause developed during that *Terry* stop.

## II. Resisting Arrest

Robinson asks the Court to hold Glass was resisting arrest. (Doc. 59 at 11). But Robinson has not identified the exact point where he believes Glass began "resisting arrest," or even when he thinks he began to place Glass under arrest.

"There is no bright-line rule to determine when an investigatory stop becomes an arrest. Rather, in determining whether stops have turned into arrests, courts consider the 'totality of the circumstances.'" *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996) (citations omitted). It is a highly fact-specific inquiry. *See id.* The inquiry asks two questions. First, how intrusive was the stop? *Id.* Second, how much was the plaintiff's

---

[4] Although the Court holds Robinson had probable cause that Glass violated GMC § 42-179, Robinson has not established as a matter of law that violation of GMC § 42-179 justifies warrantless arrest under the applicable local or state law.

[5] The Court notes that the distinction between probable cause for each offense may not be significant. "[I]f the facts support probable cause to arrest for one offense, the arrest is lawful even if the officer invoked, as the basis for the arrest, a different offense as to which probable cause was lacking." *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016).

liberty restricted? *Id.* "The relevant inquiry is always one of reasonableness under the circumstances." *Id.* (quoting *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995)).

"There has been an arrest if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning." *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001). Here, a reasonable person would have understood Robinson statement, after a few minutes of questioning, that he was going to put Glass in handcuffs as a command that Glass was not free to leave. Indeed, Glass admits she understood Robinson's statement that he was going to put her in handcuffs meaning that she was under arrest. (Doc. 65 at 3). Moreover, Robinson grabbing Glass's arm to put her in handcuffs restricted her liberty significantly. Handcuffing does not automatically transform a *Terry* stop into an arrest, *see Alexander v. Cty. of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995), but in light of the totality of the circumstances and the objective reasonableness of the parties' subjective understanding that Glass was under arrest, the Court finds Robinson arrested Glass around the time when he grabbed her arm.[6] Further supporting the Court's conclusion that Glass was placed under arrest when Robinson grabbed her to put her in handcuffs is the fact that Glass's liberty remained continuously restricted until she was released from the hospital or police custody many hours later.[7] (Doc. 60 at 5).

Because the Court holds based on undisputed evidence that Glass continued to resist Robinson's grip after he began to place her under arrest, the Court holds Glass resisted arrest.[8] However, as explained above, the Court does not hold that the arrest was supported by probable cause. Whether there were facts sufficient to establish probable cause is a

---

[6] Although Robinson repeatedly told Glass she was being detained, not arrested, the Ninth Circuit has held that the distinction between telling a suspect they are under arrest or not telling them "is not pivotal" in determining whether an arrest occurred. *See United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990).

[7] The record before the Court at summary judgment does not indicate exactly when Glass was released from custody.

[8] The Court notes that Glass's resistance may not be unlawful if the jury determines that probable cause did not exist. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 920 (9th Cir. 2001) ("If the officers could not lawfully arrest Arpin for battery, the officers could also not lawfully arrest Arpin for resisting arrest.").

- 9 -

question for the jury.

### III. Entitlement to use force

Robinson seeks summary judgment that "he was entitled to use force to overcome Plaintiff's resistance." (Doc. 59 at 2).

Officers are entitled to use some degree of force to effect both *Terry* stops and arrests. *See Leibel*, No. CV-18-01743-PHX-DWL, 2021 WL 3773770, at *13 ("[A]n officer conducting a *Terry* stop may use force to prevent the suspect from leaving before the stop has run its course.") (citations omitted); *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1116 (9th Cir. 2017) ("Deputy Padilla was entitled to use some degree of force in executing Shafer's arrest."); *see also* A.R.S. § 13-409. And authorization to use force necessarily carries with it a limited entitlement to "overcome" any resistance. But an individual's resistance to arrest, however slight, does not mean an officer is entitled to use whatever force the officer wishes. Robinson is therefore correct that officers can use force to overcome resistance, but it is for the jury to determine whether the particular use of force Robinson employed was objectively reasonable under the circumstances in light of Glass's behavior and the exigency of the moment.

### IV. Attorney's fees and costs

The Supreme Court has held a prevailing plaintiff in a § 1983 action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citations omitted); *see also Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016) (same). Only when a § 1983 claim is frivolous, can a prevailing defendant recover his attorney's fee. *See Hensley*, 461 U.S. at 435 n.10.

Robinson has not established Glass's claims (Doc. 1), are frivolous. To the contrary, her arguments appear eminently reasonable given the significant use of force against her and the injuries she suffered as a result. Moreover, Robinson's motion for partial summary judgment (Doc. 59) was not entirely successful. The Court therefore will not award attorney's fees to the Defendant.

**CONCLUSION**

The Court grants Robinson's partial motion for summary judgment (Doc. 59) in limited part. This matter is now ready for trial.

Accordingly,

**IT IS ORDERED** Defendant's Motion for Partial Summary Judgment (Doc. 59) is **GRANTED IN PART**. The Court finds: (1) Defendant Christopher Robinson had reasonable suspicion to detain Plaintiff Samantha Glass pursuant to *Terry v. Ohio*; (2) Robinson began to arrest Glass when he grabbed her arm and told her he was putting her in handcuffs; (3) Glass resisted arrest during the encounter with Robinson; (4) Robinson was entitled to use some degree of force detain or arrest Glass.

**IT IS FURTHER ORDERED** Plaintiff's claim that Defendant violated her rights under the Fourteenth Amendment of the United States Constitution (Doc. 12-1 at 4) is **DISMISSED WITH PREJUDICE** because it is duplicative of Plaintiff's claim under the Fourth Amendment. *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

**IT IS FURTHER ORDERED** all Motions in Limine are due no later than **June 21, 2022**. Responses are due no later than **July 1, 2022**. No replies are permitted unless ordered by the Court. Prior to filing any Motion in Limine, the parties must confer and discuss the contents of each proposed motion. No Motion in Limine shall be filed if opposing party does not dispute the relief requested.

**IT IS FURTHER ORDERED** the Joint Proposed Pretrial Order is due no later than **July 6, 2022**.

**IT IS FURTHER ORDERED** the parties shall review the Court's standard Juror Questionnaire (available on the Court's website) and each party is to file **NO MORE THAN FIVE PROPOSED QUESTIONS** to be added to the standard Juror Questionnaire no later than **July 6, 2022**. Each proposed question shall stand alone and shall not contain sub-parts.

**IT IS FURTHER ORDERED** the parties shall file a very brief Joint Statement of the Case, that will be incorporated into the Juror Questionnaire, no later than **July 6, 2022**.

**IT IS FURTHER ORDERED** the parties shall file a second Joint Statement of the Case, of no more than two short paragraphs that will be read to the jury, no later than **July 18, 2022**.

**IT IS FURTHER ORDERED** no later than **July 18, 2022**, the parties shall file and submit via email (silver_chambers@azd.uscourts.gov) in Word format proposed Jury Instructions in compliance with the procedures available on the Court's website, including but not limited to: 1) a joint set of proposed jury instructions where they agree; 2) a separate set of instructions (one for each party) where the parties do not agree; and 3) legal authority supporting all proposed instructions whether the parties agree or not. Where the parties do not agree, the opposing party shall clearly state its objection to the proposed instruction and the proponent of the instruction shall provide a response in support of the proposed instruction.

**IT IS FURTHER ORDERED** the parties shall jointly file a proposed form of verdict, or if the parties do not agree, they are to separately file proposed forms of verdict no later than **July 18, 2022**.

**IT IS FURTHER ORDERED** no later than **July 18, 2022**, the parties shall deliver to chambers excerpts of the deposition testimony they propose to present as witnesses at trial, in compliance with the procedures available on the Court's website (found in Deposition Designation Procedure for Judge Silver).  The Plaintiffs are to highlight in yellow the portions they wish to offer. and the Defendants are to highlight in blue those portions they wish to offer.  If either party objects to any proposed testimony, a specific and concise objection (e.g., "Relevance, Rule 402") shall be placed in the margin adjacent to the proposed testimony.  The party proposing the testimony to which there is an objection is to respond to the objection that has been placed in the margin by the objecting party.

**IT IS FURTHER ORDERED** a final pretrial conference is set for **August 10, 2022 at 10 a.m.** at which time the Court will review with counsel the Juror Questionnaires.  The parties shall meet and confer prior to the pretrial conference regarding the Juror Questionnaires and email to the Courtroom Deputy no later than noon on **August 9, 2022**

a list of the jurors they agree should be stricken for cause, and any objections to jurors they do not agree should be stricken for cause. **The parties shall not file this list.** The Court will rule on any disputed jurors at the final pretrial conference.

**The parties will be supplied a disk containing the questionnaires approximately one week prior to the final pretrial conference.  Counsel shall bring a copy of the questionnaires to the conference for review.  Counsel are required to return the disk to the Courtroom Deputy and destroy all copies of the questionnaires no later than the last day of trial.**

**IT IS FURTHER ORDERED** trial to a jury is set for **August 17 at 8:30 a.m.** Estimated length of trial is **3** days.

**IT IS FURTHER ORDERED** the parties shall comply with the Exhibit Procedures found on the Court's website at www.azd.uscourts.gov / Judges' Information / Orders, Forms & Procedures for Hon. Roslyn O. Silver.

Dated this 27th day of January, 2022.

Honorable Roslyn O. Silver
Senior United States District Judge